**Wytheville.**

MARTIN & OTHERS v. SOUTH SALEM LAND COMPANY & OTHERS.

JULY 11, 1899.

Absent, Keith, P.*

1. INSOLVENT CORPORATIONS—*Enforcement of Stock-Subscriptions—Final
   Decree—Act December 22, 1897.*—A decree which settles the princi-
   ples of a cause, determines the rights of creditors, the validity of
   stock subscriptions, and the liability of stockholders to pay the
   same as far as necessary to satisfy the demands of creditors, and
   leaves nothing to be done except to execute and give effect to it,
   is a final decree on the merits within the purview of the Act of
   December 22, 1897 (Acts 1897-'8, p. 16).
2. CONSTITUTIONAL LAW—*Statutes—Construction—One Construction In-
   valid.*—If two constructions may be given to a statute, one of which
   is clearly within, and the other without, the legislative power, the
   courts will adopt that construction which is within the legislative
   power.
3. CORPORATIONS — *Assessments on Stockholders — Insolvency—Execution
   Returned "No Effects."*—In determining what, if any, additional
   assessments should be made on solvent stockholders to pay debts
   of creditors of the company, a return of "no effects" on executions
   issued on decrees for former assessments is *prima facie* evidence,
   at least, of the insolvency of those as to whom such returns were
   made.
4. INSOLVENT CORPORATIONS—*Decrees Against Stockholders—Proceedings
   Against Real Estate.*—In winding up the affairs of an insolvent cor-
   poration, and collecting assessments of its stockholders, the credi-
   tors will not be compelled to enforce decrees for assessments
   against the real estate of the stockholders. It is immaterial
   whether the relation of stockholders to each other is that of prin-

* Judge Keith was a party to one of the suits.

cipal and surety, or of co-sureties. The adjustment of these rights between the stockholders would be too tedious and dilatory to require creditors to resort to it.

Appeal from a decree of the Circuit Court of Roanoke county, rendered April 9, 1898, in several chancery suits heard together (see styles of suits 94 Va. 16), in most of which the appellants severally were the complainants, and the South Salem Land Co. was a defendant.

*Affirmed.*

The opinion states the case.

*Watts, Robertson & Robertson, S. Griffin, Scott & Staples, Eppa Hunton, Jr., Maury & Maury, M. M. Gilliam,* and *Rixey & Barbour,* for the appellants.

*Phlegar & Johnson, A. B. Pugh,* and *L. C. Hansbrough,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The first error assigned is that the Circuit Court had no right to enter a decree against the defendants for the thirty *per cent.* additional assessment upon the capital stock of the company, but should have directed its receivers to sue at law under the Act of Assembly approved December 22, 1897. Acts of Assembly 1897-8, p. 16.

Section 1 of that act provides that " all suits or motions for the recovery of unpaid subscriptions to the stock of any joint stock company shall be brought in the courts of common law of this Commonwealth, in the county or corporation where the defendant resides, if he be a resident of this State, or in the case of a joint or partnership subscription, then in the county or corporation in this State in which either of the joint subscribers or any member of the partnership subscribing shall reside; and said courts shall have exclusive jurisdiction to hear and deter-

mine all questions involving the validity of such subscriptions, but nothing herein contained shall be construed to deprive courts of chancery of their jurisdiction to settle and wind up the affairs of insolvent corporations, or to make assessments on unpaid stock subscriptions."

By section 2 it is provided that " in all cases where it is necessary to resort to a court of equity for the purposes aforesaid, the courts shall direct the trustee, assignee, or receiver, as the case may be, to sue at law, when necessary to recover any call or assessment, and the defendant shall be entitled to a jury where the amount involved exceeds twenty dollars, and said suits shall be governed in all respects by the provisions of this act. All pleas, defences, and evidence which would be admissible if the company were solvent shall be equally admissible, and shall have the same effect in law in any action brought after the insolvency of any such company, except where the defence relied upon is an agreement on the part of the corporation not to assess the face value of the stock subscribed, and such agreement was unknown to the creditor at the date of his contract; and this act shall apply to all suits heretofore or hereafter brought where no final judgment or decree on the merits has been rendered."

The provisions of the act, by its terms, apply not only to cases brought after the passage of the act, but also to cases then pending where no final judgment or decree on the merits had been rendered. This suit was then pending, and had been since the year 1892. Whether the Circuit Court erred in rendering the decree complained of depends upon the character of the decree which had been entered in the case before the Act of Assembly relied on was enacted.

By a decree rendered at the September term, 1894, the validity of the stock subscriptions of the appellants and the other subscribers had been determined, their liability fixed, an assessment of twenty *per cent.* made on their subscriptions, and an execution directed to issue against each stockholder for the sum assessed

upon his stock.  The court expressly reserving the right (which it would have had without the reservation) to make further assessments if it became necessary to satisfy the debts proved in the case, and for the payment of which the unpaid stock subscriptions had been held to be liable.  That decree on appeal to this court was affirmed, and the cause remanded for further proceedings. (*Martin* v. *South Salem Land Co.*, 94 Va. 16.)

The chief object of the act in question was to deprive courts of equity of jurisdiction to determine the validity of subscriptions to the stock of joint stock companies, and to give subscribers the right of trial by jury in actions at law in all such cases, whether thereafter brought, or then pending, unless the proceedings in the pending case had proceeded so far that a decree upon the merits of the case had been rendered, and the rights and liabilities of the parties fixed.  If such a decree had been rendered, then the court of equity proceeded with the case as if the statute had never been passed.

That the decree in this case is a " final decree on the merits " is, in our opinion, quite clear.  It not only settles the principles of the cause, but it determines the rights of the creditors, the validity of the stock subscriptions of the appellants, and of the other subscribers to stock, and their liability to pay the same, as far as may be necessary, to satisfy the demands of creditors, and what remains to be done in the case, as was said upon the former appeal, in which the court considered the character of the decree in question, is merely to execute and give effect to it.

To hold that the Legislature intended that in all such cases where there had not been a final decree in the technical sense of that term there should be a trial by a jury in which the matters litigated or settled in the chancery cause might be relitigated after a court of competent jurisdiction had passed upon and determined the rights and liabilities of the parties, would be to impute to the Legislature an intention to do what it had no power to do, and that too when the language used is capable of a

construction which shows that it only intended to do what was within its power.   Nothing is better settled than if two constructions may be given a statute, one of which is clearly within, and the other without, the legislative power, the courts will hold that it intended to do that which it had the right to do, and not that which was beyond its power.   *Martin* v. *South Salem Land Co., supra,* p. 37.

It is claimed that the Circuit Court erred in making another assessment upon those stockholders who had paid the first assessment, without further effort on the part of the receivers to collect the assessment made against the stockholders who had not paid, and who, for that reason, were regarded as insolvent.

Executions were issued as provided in the decree of the September term, 1894.   Of these many were returned "no effects." Afterwards the court directed one of its commissioners to ascertain which of the stockholders were solvent, what further assessment would be necessary to pay the debts theretofore decreed to be paid, and what amount should be assessed against them. The commissioner reported that it was almost impossible for him to state which of the stockholders were solvent, but that in his opinion all those who had made payments to the receiver were solvent, and all against whom executions had been issued and returned "no property found," were insolvent, at least as to their personal property.   He further reported that it would require an additional assessment of thirty *per cent.* to raise a sum sufficient to satisfy the debts decreed to be paid, and the costs that would be incurred in the case.   This report was excepted to upon several grounds, one of which was that no further assessment should be made against the stockholders who paid the assessments theretofore made until the assets of all the stockholders who had not paid had been exhausted, and because no report had been made as to what real estate or other property is owned by the delinquent stockholders.   Those exceptions were overruled, and the report confirmed, and, in so doing, we do

not think the court erred, under the facts of the case. The return of " no effects " upon the execution issued against a stockholder was *prima facie* evidence, at least, that he had no assets out of which the debt could be made; and, in the absence of any legal evidence that he owned property out of which the execution could be satisfied, the court was justified in treating such stockholder as insolvent, in determining what additional assessment would be necessary. If the stockholders who had paid had reason to believe that the delinquent stockholders had property which could be subjected to the payment of the executions against them, that fact should have been brought to the attention of the court.

In the case of *Godfrey, Receiver, &c.* v. *Terry,* 97 U. S. 171, a joint decree had been rendered against stockholders of a bank, when their liability was several, and not joint. The court held that this was error. Mr. Justice Miller, in delivering the opinion of the court, stated that the proper practice in such a case was to ascertain " the sums due from each stockholder, give a decree *nisi,* with time for each man to pay the sum assessed. Against such as did not pay let execution issue; and if *nulla bona* was returned, there must be a new assessment against the others until all is paid, or the sum of the several liabilities exhausted."

If it were conceded, as the counsel for the appellants insist, that the relation between the stockholders and the company was that of principal and surety, and as between themselves that of co-sureties, it does not follow that the court should have ascertained whether or not the delinquent stockholders were the owners of real estate, and, if so, have subjected it to the payment of the amounts decreed against them respectively before making a further assessment.

It is true, as a general rule, as counsel for appellants insist, that a court of equity, in enforcing a judgment lien against the lands of the principal and his sureties, will respect the equities of the parties *inter sese,* and administer them upon principles

peculiar to that, forum, *as far as it can be done without too great delay and without prejudice to the rights of the creditor. Horton* v. *Bond,* 28 Gratt. 815; *Wytheville Crystal Ice & Dairy Co.* v. *Frick Co.,* 96 Va. 141.

This suit was not brought to subject the lands of the stockholders to the payment of the principal's debt, but to compel them to pay their stock subscriptions as far as might be necessary to satisfy the debts of the creditors, after the other assets of the company had been exhausted. The creditors had at that time no lien upon the real estate of the stockholders. Such liens as they or the receivers have acquired result from the decrees rendered in this cause, and cannot be enforced against the real estate of the stockholders except by an amended and supplemented bill for that purpose (if that be permissible) or by instituting new suits against the delinquent stockholders. To compel the creditors to wait for their money until such proceedings as these could be taken, with all the delays that usually attend creditors' suits in taking accounts, in bringing in lienors, in making sales and resales, would result in very great delay and prejudice to the creditors. It would postpone them indefinitely in the collection of their debts. The doctrine invoked by the appellants will not be carried to that extent. *Bell* v. *McConkey,* 82 Va. 176.

We are clearly of opinion that there is no error in the decree complained of to the prejudice of the appellants, and that it should be affirmed.

*Affirmed.*